Michael Poreda, Esq. # 025492010
**WRONKO LOEWEN BENUCCI**
69 Grove Street
Somerville, NJ 08876
PH: (908) 704-9200
FAX: (908) 704-9291
poreda@poredalaw.com
*Attorney for Plaintiff*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLEN DAVIES,<br>                    *Plaintiff*,<br><br>vs.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, OFFICER MAKOS, OFFICER HAND, SHAMECA K. LAWSON, JOHN DOES 1-10,<br><br>                    *Defendants*. | Docket No.<br><br>**<u>Civil Action</u>**<br><br>**COMPLAINT** |

1.) Glen Davies, whose date of birth is January 15, 1989, is currently an inmate at Mid-State Correctional Facility.  His SBI is 886670D.

2.) Davies entered Department of Corrections custody at Bayside State Prison on September 9, 2018.

3.) Davies got a job in the kitchen at Bayside State Prison that began on March 21, 2019. This was a highly valuable position for Davies, who has no means of financial support other than his prison job.  Kitchen jobs pay about $90/month, whereas other jobs pay about $15/month.

4.) Davies's principal supervisor in the kitchen was Officer Makos.

5.) On Davies's first day in the kitchen, Officer Makos learned that Davies had wrestled in high school.  Makos challenged Davies to a wrestling match, during which Davies's arm was wounded on a light socket with a jagged metal edge, leaving a significant scar.

6.) Davies did not report the incident for fear of reprisal.

1

7.) Realizing that Davies was not a "snitch," that Davies was a "state baby" (meaning he had no financial support other than the kitchen job), and that turnover in the kitchen was high, Makos commenced upon a terror campaign in which he assaulted Davies on a regular basis for nine months, principally in the kitchen office.

8.) Whenever Davies made any kind of mistake, even a minor one, Makos told Davies that he could avoid being fired by being physically assaulted.

9.) Typically, Makos would find Davies guilty of some minor violation and tell Davies, "You owe me one." Makos would keep track of "how many" Davies "owed him." After each shift, Makos would take Davies to the back room of the kitchen, where he would punch or kick Davies eight or nine times for every infraction that Makos called Davies on.

10.) Although Plaintiff quickly became adverse to the abuse, he was too terrified to complain or notify the State, afraid that Makos would inflict even more severe retaliation against him.

11.) On approximately 10-15 occasions, Officer Hand, a friend of Makos who also worked in the kitchen, joined Officer Makos in the assaults.

12.) Davies walked around with bruises all over his body, which were witnessed by other inmates, including his bunk mate Steven Ruck.

13.) Initially the assault was limited to punching.

14.) After about 5 months of being punched about 3-5 times per week, Davies's body developed an immunity to the punching.

15.) Makos then progressed to kicking.

16.) After one beating, the bruise left by Makos on Davies's body left an imprint of Makos's boot. This bruise was witnessed by Pete Mazza, another victim of Makos's brutal campaign of beatings.

17.) Some beatings were not even tied to infractions.

18.) In one incident that occurred in June 2019, Davies tried to intervene to stop the beating of another inmate being perpetrated by Makos and a second inmate. The inmate participating in the beating was 6' 6" and 300 lbs. The large inmate squeezed Davies's head between his knees to immobilize him while Makos proceeded to punch Davies in the ribs.

19.) The following day, Makos and 2 other inmates "jumped" Davies and handcuffed him to a fence outside where they beat him nearly to the point of unconsciousness.

20.) Also in June 2019, there was an incident in the officer's dining room where someone lost the food of one of the correctional officers, Shameca Lawson. The inmates working the dining room were told they had to pay Ms. Lawson back by buying her boxes of candy, which Plaintiff could not afford. Lawson told Plaintiff, "There's another way you can pay." Makos made Davies pay by forcing Davies to pull down his pants so that he could strike Davies's bare buttocks with a ruler. Two inmates who witnessed this told Davies they could "see the two-inch marks" branded on his buttocks. This incident was particularly humiliating to Davies.

21.) In July 2019, Makos organized a group of inmates to beat up Davies in the office. One of the inmates punched Davies in the face three times, and there was blood all over the floor as a result. One of the inmates was serving as a lookout. The lookout alerted Makos and the other inmates that a Sergeant was coming. Makos and the inmates hid Davies in the back of the office so that the Sergeant would not see all the blood. Davies suffered two black eyes as a result of this incident.

22.) At some point near the end of the summer, Davies pleaded with Makos to give him time to heal from the pain. Makos had brought in particularly spicy Carolina Reaper Peppers. He used consumption of the peppers as punishment for the inmates. Makos told Davies he would give him a few days for every pepper that Davies ate. Davies ate a plate of the peppers and won a month's reprieve from the beatings.

23.) In October, Makos asked Davies if he could "catch two balls at the same time," a reference to the World Series, which was happening at that time. Makos sent Davies to the office and made him sit in a plastic chair that had unstable legs. Makos and Hand pelted Davies with oranges. The chair collapsed, and Davies arm was cut in the fall.

24.) The last beating occurred on December 5, 2019. A camera had been placed in the office where most of the beatings occurred, and this beating was caught on camera.

25.) The last beating was not a particularly bad one because Makos had become aware that word was spreading about his illegal campaign of beatings in the kitchen.

26.) On December 9, 2019, Davies was transferred to East Jersey State Prison.

27.) At East Jersey State Prison, photographs were taken of the bruises on Davies body at the time.

28.) Davies was interviewed by SID at East Jersey State Prison, however, Davies was afraid during the interview and did not reveal all the details to the investigators, including the involvement of Officer Hand and Officer Lawson.

29.) However, Davies gave SID enough information to launch a criminal investigation.

30.) Davies is now experiencing severe psychological disorder as a result of the trauma he underwent at Bayside State Prison and has sought psychological aid.

31.) Makos used to make Davies assume the same position that officers use to pat down prisoners when Makos would assault Davies.

32.) Now, whenever Davies is pat down, he begins to get severe anxiety attacks.

33.) Davies has experienced hysterical blindness and a loss of equilibrium due to the anxiety attacks.

34.) Davies is plagued by a constant sense that something terrible is about to happen to him.

35.) Davies has nightmares due to the attacks.

36.) Davies is in prison due to a heroin addiction. The stress of his psychological disorder has caused him to relapse in his addiction.

37.) On January 27, 2020, Davies filed a timely Notice of Tort Claim.

## COUNT 1
## BATTERY

38.) Defendants Makos and Hand intentionally made harmful and offensive contact with Plaintiff's body.

39.) Defendants Makos and Hand made this harmful and offensive contact within the discharge of their duties as employees of the Department of Corrections.

40.) Makos and Hand's harmful and offensive contact caused Plaintiff damages.

41.) Plaintiff could not reasonably have been expected to give consent to the batteries due to the disparity of power between Plaintiff and Defendants. Refusal of submission to the beatings would have resulted in retaliation and loss of his job. The Defendants had the power of coercion over Plaintiff, and this power negates any defense of consent.

## COUNT 2
## ASSAULT

42.) Makos and Hand, by letting Plaintiff know that he was going to be "punished" through a series of beatings in which he had to assume a certain position, placed Plaintiff in fear of imminent harmful and offensive contact.

43.) Defendants Makos and Hand made this harmful and offensive contact within the discharge of their duties as employees of the Department of Corrections.

44.) Makos and Hand's placing Plaintiff in fear of imminent harmful and offensive contact caused Plaintiff damages.

## COUNT 3
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45.) The pattern of abuse by Makos and Hand constituted extreme and outrageous conduct.

46.) The unprovoked assault caused Plaintiff extreme emotional distress.

47.) The severe emotional distress has been manifested by anxiety and panic attacks, loss of equilibrium, hysterical blindness, nightmares, and addiction relapse.

## COUNT 4
## CIVIL CONSPIRACY

48.) Defendants Makos and Hand agreed to assault Plaintiff on multiple occasions and also agreed to make the sadistic beatings of Plaintiff a routine practice.

49.) Upon Hand's striking Plaintiff's body, Makos and Hand committed an overt act in furtherance of the conspiracy, which resulted in damages to Plaintiff.

50.) Makos agreed with the 300lb inmate to assault Plaintiff when Plaintiff tried to stop the two of them from beating another inmate.

51.) When Makos and the 300lb inmate grabbed and struck Plaintiff, they committed overt acts in furtherance of the conspiracy to harm Plaintiff, which resulted in damages to Plaintiff.

52.) When Makos, Hand, and other inmates agreed to tie Plaintiff to the fence and beat him almost to the point of unconsciousness, and they indeed carried out this plain, resulting in damages to the Plaintiff, all parties became liable for civil conspiracy.

5

53.) Makos and Hand bragged to Shameca Lawson about their campaign of beating Plaintiff to have him "make up" for mistakes that he made.

54.) In June 2019, she asked Hand and Makos to beat Plaintiff, which they did.

55.) The combination of Makos, Hand, and Lawson, in a real agreement with a common design to unlawfully assault Plaintiff, which they did, renders them all liable for civil conspiracy to perpetrate assault and battery.

## COUNT 5
## NEGLIGENT HIRING, TRAINING, SUPERVISION,

56.) John Does 1-10 are supervisors and administrators responsible for the hiring, training, and supervision of Makos, Hand, and Lawson.

57.) John Does 1-10 had a duty not to hire prison officers with a propensity to inflict harm on inmates.

58.) But for the failure of John Does 1-10 to carry out duly diligent background checks, they would not have hired Makos, Hand, and/or Lawson.

59.) As a proximate result of the hiring of Makos, Hand, and Lawson, Plaintiff suffered severe injuries, including permanent scarring.

60.) John Does 1-10 had a duty to train Makos, Hand, and Lawson.

61.) John Does 1-10 were negligent in the training of Makos, Hand, and Lawson regarding appropriate physical contact with inmates. John Does 1-10 had a duty to effectively train these officers that use of physical "punishment" for workplace mistakes was not acceptable. John Does 1-10 failed to effectuate this training.

62.) This failure to properly train proximately caused Plaintiff's damages.

63.) John Does 1-10 were responsible for the supervision of Makos, Hand, and Lawson.

64.) John Does 1-10 were negligent in various ways in their supervision of Makos, Hand, and Lawson.

65.) John Does 1-10 were negligent in not having cameras installed in areas like the kitchen office, where assaults could take place out of the eye of supervisors.

66.) Alternatively, John Does 1-10 were negligent in failing to monitor the security video in the kitchen office.

67.) Also, John Does 1-10 knew that Makos was beating inmates in the kitchen office and did not take reasonable steps to stop the beatings.

68.) Bayside State Prison has a culture of corruption in which officer routinely abuse their power by, among other things, coercing and abusing inmates for sadistic and self-serving purposes.

69.) John Does 1-10 were negligent in tolerating and encouraging this culture. John Does 1-10 had a duty to prevent this culture from forming. The steps they ought to have taken included, but were not limited to fully investigating and disciplining officers who abused their power over prisoners; educating officers about the unacceptability of abusing their power; continuously monitoring the corps of officers for signs of abuse of power. Instead, John Does 1-10 tolerated and encouraged the culture of abuse by looking the other way, making excuses for officers, ignoring or incompletely investigating inmate complaints, failing to appropriately discipline officers who abused their power, failing to educate officers about the unacceptability of abusing their power, and failing to monitor for signs of abuse of power.

70.) As a proximate result of this negligently created culture, Plaintiff suffered damages.

### COUNT 6
### 42 U.S.C. § 1983 – 8th AMENDMENT/4th AMENDMENT – EXCESSIVE FORCE/CRUEL AND UNUSUAL PUNISHMENT

71.) The use of force against Plaintiff by Makos and Hand was totally unreasonable and unjustified.

72.) The unreasonable use of force against an inmate constitutes excessive force and is a seizure within the meaning of the Fourth Amendment.

73.) Excessive force exerted against a prisoner also constitutes cruel and unusual punishment within the meaning of the Eighth Amendment.

74.) John Does 1-10 are supervisors of Makos, Hand, and Lawson who are liable under Section 1983 for supervisory liability.

75.) John Does 1-10 knew about the campaign of constitutional violations occurring in the kitchen under the watch of Officer Makos, as talk about this practice was widespread among officers and inmates.

76.) In spite of their knowledge of the campaign of constitutional violations occurring in the kitchen under the watch of Officer Makos, John Does 1-10 did nothing and ignored the practice.

77.) The knowing ignorance of the constitutional violations occurring against Plaintiff and others in the kitchen states a claim for direct involvement supervisory liability against John Does 1-10.

## COUNT 7
## 42 U.S.C. § 1986 – NEGLECT TO STOP CIVIL RIGHTS VIOLATION

78.) Shameca Lawson was aware of the campaign of beatings that Officers Makos and Hand were perpetrating against Plaintiff, as evidenced by her comment that there were "other ways" Plaintiff could pay her back for losing her plate of food.

79.) Lawson knew that Makos and Hand were violating Plaintiff's constitutional rights on a continual basis.

80.) Lawson could have reported the beatings and brought them to an end.

81.) Lawson neglected to report the beatings.

82.) Officer Hand could have reported or stopped Officer Makos from beating Plaintiff.

83.) Instead, Officer Hand joined in on the beatings.

84.) John Does 1-10 were other DOC employees who knew about Makos's campaign of constitutional violations.

85.) John Does 1-10 could have stopped the violence against Plaintiff by reporting it and/or terminating Makos and Hand, but they did nothing and permitted the continual violation of Plaintiff's rights.

## COUNT 8
## 42 U.S.C. § 1986 – CONSPIRACY TO VIOLATE CIVIL RIGHTS

86.) Defendants Makos and Hand agreed to violate Plaintiff's civil rights on multiple occasions by agreeing to beat him sadistically and without justification.

87.) Upon Hand's striking Plaintiff's body, Makos and Hand committed an overt act in furtherance of the conspiracy, which resulted in damages to Plaintiff.

88.) Makos agreed with the 300lb inmate to assault Plaintiff when Plaintiff tried to stop the two of them from beating another inmate.

89.) When Makos and the 300lb inmate grabbed and struck Plaintiff, they committed overt acts in furtherance of the conspiracy to use unreasonable, sadistic force against Plaintiff, which resulted in damages to Plaintiff.

90.) When Makos, Hand, and other inmates agreed to tie Plaintiff to the fence and beat him almost to the point of unconsciousness, and they indeed carried out this plain, resulting in damages to the Plaintiff, all parties became liable for violation to violate Plaintiff's civil rights.

91.) Makos and Hand bragged to Shameca Lawson about their campaign of beating Plaintiff to have him "make up" for mistakes that he made.

92.) In June 2019, Lawson asked Hand and Makos to beat Plaintiff, which they did.

93.) The combination of Makos, Hand, and Lawson, in a real agreement with a common design to violate Plaintiff's civil rights to be free of unreasonable force, which they did, renders them all liable for conspiracy under Section 1986.

**WHEREFORE**, Plaintiff demands judgment in the form of:

- Economic Damages
- Non-Economic Damages
- Punitive Damages
- Injunctive Relief
- Declaratory Relief
- Court fees and costs
- Attorneys Fees
- Other remedies as the court may see fit

## MONETARY DEMAND

Demand is hereby made in the amount of $1.2 million.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

_____
MICHAEL POREDA, ESQ.
*Attorney for Plaintiff*

9

Date: August 12, 2020

## NOTICE OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that Michael Poreda, Esq. is hereby designated as Trial Counsel in the above-captioned matter.

                                              Michael Poreda, Esq.
                                              *Attorney for Plaintiff*

Date: August 12, 2020

## CERTIFICATION OF NO OTHER ACTION

Pursuant to Rule 4:5-1, it is hereby certified that to the best of my knowledge and belief, there are no other pending actions or proceedings involving the matter in controversy, none are contemplated, and I do not presently know the identity of any other party who should be joined.

                                              Michael Poreda, Esq.
                                              *Attorney for Plaintiff*

Date: August 12, 2020